PEOPLE ex rel. MOORE v. HOLMES.

(Supreme Court, Appellate Division, Fourth Department. May 8, 1912.)

1. HABEAS CORPUS (§ 83*)—ANSWER TO RETURN—HEARING—EVIDENCE.

Under Code Civ. Proc. § 2039, which provides that a prisoner produced upon the return of a writ of habeas corpus may under oath deny material allegations of the return, or allege facts to show that his detention is unlawful or that he is entitled to his discharge, and that thereupon the court must proceed, in a summary way, to hear the evidence, and to decide as justice may require, the Special Term is not authorized to accept as true the statements of fact contained in relator's answer to the return, in the absence of evidence to support them.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 75; Dec. Dig. § 83.*]

2. HABEAS CORPUS (§ 113*)—APPEAL—MATTERS CONSIDERED ON APPEAL.

Where the Special Term was not authorized to accept as true without evidence, the statements of fact contained in relator's answer to a return to a writ of habeas corpus, and where no stipulation as to the truth of such facts was presented to the court below, the Appellate Division, on appeal, will consider the case as if disposed of by the court below upon the return alone, since it cannot give effect to a stipulation, made after the appeal was brought, as supplying the place of proof in the court below.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 102–115; Dec. Dig. § 113.*]

3. HABEAS CORPUS (§ 83*)—RETURN—ANSWER—CONSTRUCTION.

An allegation in an answer to the return on a writ of habeas corpus that an agreement had been entered into in writing between relator and a fraternal organization is not an allegation that the contract was made before the passage of a statute under which relator had been arrested and detained, so as to render the statute void as impairing the obligation of such contract.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 75; Dec. Dig. § 83.*]

4. INSURANCE (§ 3*)—POWER TO REGULATE.

The Legislature has power to regulate the business of life insurance in this state, whether carried on by a domestic or foreign company, an individual, or an association.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 3; Dec. Dig. § 3.*]

5. CONSTITUTIONAL LAW (§ 48*)—VALIDITY—PRESUMPTION.

Every act of the Legislature is presumed to be valid and constitutional until the contrary is made to appear; and, before a statute can be declared unconstitutional, the person assailing it must show affirmatively that its operation infringes upon his constitutional rights.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 46; Dec. Dig. § 48.*]

Appeal from Special Term, Erie County.

Habeas corpus, on the relation of Fred T. Moore, against James Holmes, a police officer of the City of Buffalo, N. Y. From an order of Special Term, dismissing the writ and remanding relator into custody, he appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, KRUSE, ROBSON, and FOOTE, JJ.

Elijah W. Holt, of Buffalo, for appellant.
Clifford McLaughlin, of Buffalo, for respondent.

FOOTE, J. By this appeal relator seeks to present the question as to whether section 936a of the Penal Law (Consol. Laws 1909, c. 40) is constitutional. That section is as follows:

"Any person or persons acting as the general officer, chief officer, grand officer or supreme, or grand officers or body in and for a secret fraternal association, society, order or organization, which maintains in this state local branches, lodges, nests, aeries, divisions, chapters or subdivisions, who shall solicit, receive, invite, admit or initiate any person or persons to membership or to participation in any such local branch, lodge, nest, aerie, division, chapter or subdivision, upon condition that such person shall pay any dues, assessments, money or reward, directly or indirectly, to any grand officer, chief officer, grand officer or supreme, or grand officers or body, unless such grand officer, chief officer, grand officer or supreme, or grand officers or body shall have been chosen or elected by and from delegates chosen by the members of the local branches, lodges, nests, aeries, divisions, chapters or subdivisions of such secret fraternal association, society, order or organization to their regular convention at which such chief officer shall be elected, shall be guilty of a misdemeanor, punishable by a fine of not less than one hundred dollars or more than two hundred dollars, or by not more than thirty days imprisonment, or by both."

It was enacted as new legislation by chapter 837 of the Laws of 1911, and took effect July 28, 1911.

Relator was arrested by defendant, a police officer of the city of Buffalo, on September 25, 1911, on a warrant issued by a judge of the City Court of Buffalo. This warrant was based upon written information under oath made by Warner J. Hutchinson, complainant, in which he said that he was a resident of the city of Buffalo—

"that the Order of Owls is a fraternal organization founded in the year 1904, and is controlled by the Home Nest, which is located at South Bend, Ind., and that the said Order of Owls have local branches called 'Nests' in the state of New York; that the general officers, grand or chief officers, of the said Order of Owls, are not chosen or elected by and from delegates chosen by the members of the local branches or Nests, but that such general or chief officers are all chosen or elected by the said Home Nest at South Bend, Indiana; that one Fred T. Moore is a general officer of the said Order of Owls, elected or appointed by the said Home Nest, and was such general officer at all the times hereinafter mentioned, and was duly authorized by said Home Nest to organize branches of the said Order of Owls in the state of New York, and that the said Fred T. Moore was not chosen or elected by and from delegates chosen by the members of the local branches of the said Order of Owls, but that he was chosen or elected by the Home Nest at South Bend, Indiana; that on or about the 18th day of September, 1911, the said Fred T. Moore, did unlawfully solicit and invite this deponent, the said Warner J. Hutchinson, to join and become a member of a local branch or Nest of said Order of Owls, which the said Fred T. Moore was and is organizing in the city of Buffalo, in the state of New York; and that the said Fred T. Moore did receive from and the said Warner J. Hutchinson did on said day pay to the said Fred T. Moore as such general officer the sum of five dollars as an initiation fee, and that said payment of said five dollars to said Fred T. Moore entitled this deponent to become a member and made him a member of the Order of Owls and a charter member of the said branch which the said Fred T. Moore is now organizing in the city of Buffalo, in the state of New York; that said solicitation was made and said money received in violation of chapter 837 of the Laws of 1911, which amends chapter 88 of the Laws of 1909, and is section 936a."

On the same day relator sued out a writ of habeas corpus returnable at Special Term, and in his petition for the writ alleged that his "imprisonment and restraint is illegal in this, to wit: That said chapter 837 of the Laws of 1911 is unconstitutional." Defendant produced relator at Special Term in obedience to the writ, and made return that he held relator by virtue of said warrant. The proceeding seems to have been held open or adjourned until October 11, 1911, when relator filed an answer to this return, in which he alleged that the warrant under which he was imprisoned was null and void and the magistrate without jurisdiction, because chapter 837 of the Laws of 1911, for violation of which the warrant was issued, is unconstitutional and void (1) because it violates section 1, art. 1, of the state Constitution, which provides that "no member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers"; (2) because it violates section 6 of article 1 of the state Constitution, which provides that "no person shall be deprived of life, liberty or property without due process of law"; (3) because it violates the fourteenth amendment of the Constitution of the United States, which provides that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws"; (4) that it violates the fifth amendment to the Constitution of the United States, which provides that, "nor shall any person be deprived of life, liberty or property without due process of law"; (5) that it violates section 2 of article 4 of the Constitution of the United States, which provides that "the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states"; (6) that it violates article 1, § 10, of the Constitution of the United States, which provides that "no state shall * * * pass any * * * law impairing the obligation of contracts." The answer then proceeds to allege that relator is a citizen of the state and a member of a secret fraternal association known as the Order of Owls, which has its chief lodge or nest located at South Bend, Indiana, and which has established and has in existence many subordinate branches throughout the states of the Union and several branches in the state of New York; that he is a general officer appointed, as are all its general or chief officers, by the Home Nest, and not from delegates chosen by members of local branches; that he is duly authorized by the Home Nest to contract with citizens of the state of New York to become members of the New York state branches, and to institute new branches in the state of New York, and that he entered into the contract with the complainant Hutchinson to become a member of a local branch which was being organized in Buffalo, and received $5 from said Hutchinson as an initiation fee; also, "that an agreement has been entered into in writing between your relator and said order by which he is to receive compensation for his services and expenses in securing such

members and organizing such branch, and he alleges upon information and belief that such agreement is authorized by the constitution and laws of said order"; also, that he is ready and desirous of performing his part of said agreement, and believes he will be able to secure sufficient members to organize such new branch, and thereby will be entitled to secure such compensation. He further alleges that the act in question and its enforcement by the police court will interfere with the performance of said contract, and thereby produce not only injury and damage to him, but also to said order.

The issue thus joined by this answer seems to have been submitted to the court at Special Term without any evidence to sustain the allegations and new matter set up in the answer, and, indeed, without the giving of any testimony whatever. On January 8th the court made the order appealed from, dismissing the writ, and remanding the relator into custody. Relator brought this appeal on January 23d, and on January 30th the parties, by their attorneys, made a written stipulation which is a part of the record, which, among other things, contains the following:

"It is further stipulated that all the allegations of fact herein are true, and that the only question at issue is the constitutionality of chapter 837 of the Laws of 1911."

[1] Section 2039 of the Code of Civil Procedure provides as follows:

"A prisoner, produced upon the return of a writ of habeas corpus may, under oath, deny any material allegation of the return, or make any allegation of fact, showing either that his imprisonment or detention is unlawful, or that he is entitled to his discharge. Thereupon the court or judge must proceed, in a summary way, to hear the evidence, produced in support of or against the imprisonment or detention, and to dispose of the prisoner as the justice of the case requires."

The Special Term was not authorized to accept as true, without evidence to support them, the statements of fact contained in relator's answer to the return. This was a pleading, and the facts alleged were required to be supported by evidence before they could be considered by the court.

[2] Hence, we must consider the case as if disposed of by the court below upon the return alone, for we cannot give effect to the stipulation made since this appeal was brought as supplying the place of proof in the court below of the facts alleged in the answer. It does not appear from this record that the facts alleged in the answer were conceded by the defendant in the court below to be true, and, as they were not proven, we must assume that the order appealed from was based on the absence of proof upon those facts. In other words, we may not properly reverse this order upon the stipulation now made as to the truth of these facts, when neither that stipulation nor any proofs of those facts were presented to the court below.

[3] This eliminates from consideration the question as to whether the statute impaired the obligation of any contract which relator held at the time of its passage. He alleges in his answer "that an agreement has been entered into in writing between your relator and

said order." This is not an allegation that the contract was made before the passage of this statute on the 28th of July, 1911. So far as appears, it may have been entered into even after his arrest, for the answer was not made until several weeks after his arrest. We are not advised by the record whether the Order of Owls is a corporation or voluntary association of individuals. It is said to be a "fraternal organization founded in 1904, and controlled by the Home Nest located at South Bend, Ind., having local branches called 'Nests' in the state of New York." This much appears from the information filed with the City Court. Whether it is a beneficiary association, having life insurance or sick benefit features, does not appear. It seems to be assumed in the briefs of counsel that it is an association of that character. At the same session of the Legislature which passed the act now in question, an act was passed (chapter 198 of the Laws of 1911) entitled, "An act to amend the insurance law, in relation to fraternal beneficiary societies, orders and associations." This act makes provision for the incorporation in this state of such associations and for permitting such associations, whether voluntary or incorporated, organized in other states, to do business in this state on certain conditions, and prohibits such business, except upon compliance with the provisions of this statute in respect to securing a license from the insurance department and complying with the other provisions of the act and requirements of the insurance department. By subdivision 2 of section 247 of this act it is provided as follows:

"Any person who shall solicit membership for, or in any manner assist in procuring membership in, any fraternal benefit society not licensed to do business in this state, or who shall solicit membership for, or in any manner assist in procuring membership in, any such society not authorized as herein provided to do business as herein defined in this state, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine of not less than fifty nor more than two hundred dollars."

Whether the Order of Owls is an association falling within the regulations and restrictions of the provisions of the Insurance Law embraced in chapter 198 of the Laws of 1911 we do not know. It is sufficient to say that it does not appear from this record that it is not such a corporation.

[4] It is certainly competent for the Legislature to regulate the business of life insurance in this state, whether carried on by a domestic or foreign company, an individual, or an association. If the Order of Owls is such a company, we do not think the Legislature has transcended its power by the act in question, whatever may be thought of the form of the act.

. [5] Every act of the Legislature is presumed to be valid and constitutional until the contrary is made to appear. Before this act can be condemned, the individual or association assailing it must show affirmatively that in its operation as to him or it, his, or its constitutional rights are infringed upon. To determine such a question as to the Order of Owls or as to the relator in his relations to that order, the court must be advised as to the nature of the business that

order is conducting, whether it is a corporation or a voluntary association of individuals; if a fraternal beneficiary organization, whether it has complied with the laws of this state permitting it to transact its business here, and has been duly licensed as such. It is conceivable that the act may be valid as to one person 'or association, and invalid as to others. On the present record we are unable to pronounce against its constitutional validity as applied to relator.

The order appealed from must be affirmed, without costs. All concur.